<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SUSAN B.,

     Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

Civil Action No. 21-12012 (GC)

**MEMORANDUM OPINION**

<u>**CASTNER, District Judge**</u>

  This matter comes before the Court upon Plaintiff Susan B.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying her request for disability insurance benefits and supplemental security income. (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons set forth below, the Court affirms the Commissioner's decision.

**I. BACKGROUND**

  In this appeal, the Court must determine whether the Administrative Law Judge's ("ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and decision by the ALJ.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

A.   **Procedural History**[2]

On December 29, 2017, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB"). (AR 15, 286-314.)  On the same date, Plaintiff filed a Title XCI application for supplemental security income ("SSI"). (*Id.* at 15, 293-99.)  Both applications alleged disability beginning March 13, 2016. (*Id.* at 15, 286, 293.)  On March 5, 2018, both claims were initially denied. (*Id.* at 15, 177-82.)  On July 30, 2018, both claims were denied upon reconsideration. (*Id.* at 15, 185-90.)  On March 23, 2020, the ALJ held a hearing on Plaintiff's applications. (*Id.* at 15, 38-73.)  Following the hearing, on April 17, 2020, the ALJ issued a decision denying Plaintiff's DIB and SSI applications and finding that she was "not disabled." (*Id.* at 15-24.)  Plaintiff appealed that decision, and the Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-3.)  Plaintiff then filed an appeal of the Administration's Appeals Council's decision to this Court. (Compl., ECF No. 1.)  On November 30, 2021, Plaintiff filed her moving brief in this action. (ECF No. 10.)  The Commissioner opposed (ECF No. 13), and Plaintiff replied (ECF No. 14).

B.   **The ALJ's Decision**

On April 17, 2020, in his written decision, the ALJ concluded that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 15-24.)  The ALJ set forth the Social Security Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 16-17.)  At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period. (*Id.* at 17.)  At step two, the ALJ determined that Plaintiff had severe impairments including "affective di[s]order and anxiety." (*Id.*

---

[2] The Administrative Record ("AR") is located at ECF Nos. 7 through 7-10.  The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

2

at 18.) Despite the ALJ finding Plaintiff had severe impairments, he determined during his step-three analysis that those impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listed Impairments"). (*Id.* at 18-19.) The ALJ then found that Plaintiff possessed the residual function capacity ("RFC") to "perform a full range of work at all exertional levels but [that Plaintiff] can [only] perform simple, unskilled work . . . with no public contact work, and no more than occasional contact with supervisors and co-employees." (*Id.* at 19-22.) At step four, the ALJ found that based on her RFC, Plaintiff was unable to perform any past relevant work. (*Id.* at 22-23.) At step five, however, the ALJ found that Plaintiff was capable of "making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 23-24.) Specifically, the ALJ concluded that Plaintiff could, within her RFC, perform the necessary duties of a hand packer, sorter, or assembler. (*See id.*) Based on the above findings, the ALJ concluded that Plaintiff had not been under a disability "from March 13, 2016 [] through the date of [the ALJ's] decision." (*Id.* at 24.)

This appeal concerns the ALJ's step-three, RFC, and step-five determinations. The ALJ's findings for each of these determinations are set forth below.

        *i.*      *Step-Three Determinations*

At step three, the ALJ considered evidence of Plaintiff's severe impairments but determined that they did not meet the criteria listed in 12.04 and 12.06. (*Id.* at 18.) In so concluding, the ALJ assessed four criteria ("Paragraph B" criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 18-22; 20 C.F.R. § 404, Subpart P. App. 1 §§ 12.04, 12.06.) When assessing each of these criteria, the ALJ could find that Plaintiff had either: (a) no limitation; (b) mild limitation; (c) moderate limitation; (d) marked limitation; or

3

(e) extreme limitation.[3] For the four criteria, the ALJ determined that Plaintiff had three moderate limitations and one mild limitation. (AR 18-19.) In reasoning each determination, the ALJ wrote "[t]his criteria is fully discussed below," directing the reader to his consideration of Plaintiff's RFC where he detailed his analyses' under each criterion for step three.[4] (*Id.*)

As to criterion one, Plaintiff's ability to understand, remember, or apply information, the ALJ credited evidence of Plaintiff's average memory and cognitive functioning in establishing a moderate limitation. (*Id.* at 20.) As to criterion two, Plaintiff's ability to interact with others, the ALJ considered Plaintiff's substance abuse, improving mood symptoms, and eye contact in again determining a moderate limitation. (*Id.* at 20-21.) As to criterion three, Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ determined the record and testimony established moderate limitations where Plaintiff reported difficulty concentrating, but attended job fairs, reported feeling "more organized and more confident[,]" and showed only mildly impaired attention and concentration. (*Id.* at 21.) Finally, as to criterion four, Plaintiff's ability to adapt and manage [her]self, the ALJ credited evidence that Plaintiff reported no problem with personal care tasks in finding a mild limitation.[5] (*Id.* at 21.)

---

[3] In order to satisfy the Paragraph B criteria at step three, an individual's mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. (AR 18; 20 C.F.R. 404, Subpart P. App.1. § 12.00(F)(2).)

[4] The ALJ wrote in his analysis of Plaintiff's RFC that "[g]iven [Plaintiff's] psychiatric diagnoses, it is appropriate to analyze the claimant's mental functioning under the rubric of the 'B Criteria[.]'" (AR 20.) The ALJ acknowledges that "[w]hile this analysis is part of the third step . . . it also sheds light on the claimant's [RFC.]" (*Id.*)

[5] In particular, the ALJ found that Plaintiff prepares "simple meals, cleans, does laundry, irons, does some shopping, drives, ships, and pays bills." (AR 21.)

4

        *ii.*        *RFC Determinations*

As to Plaintiff's RFC, the ALJ concluded the while Plaintiff's medically determinable impairments could reasonably cause the symptoms she alleged, Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence ...." (*Id.* at 21.) In substantiating this finding, the ALJ credited evidence that Plaintiff exhibited intact attention and concentration, was attending job fairs, seeking employment, feeling less depressed with treatment, and performing daily living activities. (*Id.*) The ALJ then considered medical opinions and prior medical findings and concluded, as the state psychological consultants did, that Plaintiff could perform unskilled work with limited social interactions. (*Id.* at 22.) In so finding, the ALJ noted the opinion of Dr. Coffey, Psy.D., who found Plaintiff suffered "no psychological limitations" and conducted testing that "did not show [Plaintiff suffered] significant cognitive deficits." (*Id.*) The ALJ, however, chose not to credit the medical opinions of Dr. Shenouda, M.D., Dr. Ginn-Scott, Ph.D., Jennifer Johnson, M.A., and Dr. Springer, Ph.D.,[6] all of whom found that Plaintiff may be significantly limited in her ability to work.[7] (*See id.*) After consideration of the medical evidence, the ALJ concluded that while Plaintiff "struggled with psychological symptoms and needed inpatient treatment at times, [she] has recovered well and has

---

[6] The ALJ briefly set forth the conclusions of each of these medical professionals. (AR 22.) Specifically, the ALJ wrote that "Dr. Shenouda M.D. found [that Plaintiff] is limited by depression. Dr. Ginn-Scott found [that Plaintiff] is unable to work due to emotionality and stress tolerance. Jennifer Johnson M.A. found [that Plaintiff] needs stability in her health and personal life to gain employment. Dr. Springer Ph.D. found [that Plaintiff] is unstable and not able to return to work. Dr. Ginn-Scott Ph.D. found marked or extreme psychological limitations." (*Id.* (citations omitted).)

[7] Specifically, the ALJ found that the opinions of these various medical professionals were "contradicted by evidence [that Plaintiff] showed impaired attention at times, but otherwise showed intact or mildly impaired attention and concentration . . . contradicted by [Plaintiff's] self-report of feeling less depressed with treatment . . . [and] contradicted by testing that did not show [Plaintiff suffered] cognitive deficits and adequate cognition and optimism after stabilization with treatment." (AR 22 (citations omitted).)

shown improved symptoms, optimism, motivation to stay sober and plans to have [a] happy and healthy life ...." (*Id.*) Accordingly, the ALJ determined Plaintiff had the RFC "to perform a full range of work at all exertional levels but [that Plaintiff could only] perform simple, unskilled work." (*Id.* at 19.)

### iii. *Step-Five Determinations*

Turning to step five, the ALJ consulted the findings of a vocational expert to determine whether jobs existed in the national economy for a hypothetical individual with Plaintiff's characteristics and RFC. (*Id.* at 23.) The vocational expert determined that jobs such as hand packer, sorter, or assembler are available to a hypothetical individual with Plaintiff's characteristics and RFC. (*Id.* 23-24.) The ALJ, thus, ruled that Plaintiff was capable "of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 24.)

## II. LEGAL STANDARD

### A. Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence

"'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not 'weigh the evidence or substitute [its own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citation omitted). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

### B. Eligibility for Disability Insurance Benefits and Supplemental Security Income

To be eligible for disability insurance benefits, a claimant must be unable to "engage in any substantial gainful activity [('SGA')] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological

7

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920. The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

For the first step, the claimant must establish that she has not engaged in any SGA since the onset of her alleged disability. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). For the second step, the claimant must establish that she suffers from a "severe . . . impairment" or "combination of impairments." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the first two steps are satisfied, the third requires the claimant to provide evidence that her impairment "meets or equals" an impairment listed in Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant demonstrates sufficient evidence under the third step, she is presumed to be disabled and is automatically entitled to disability benefits. *See id.* If she cannot so demonstrate, however, the eligibility analysis proceeds to step four. *See* 20 §§ C.F.R. 404.1520(e), 416.920(e).

Under the fourth step, the ALJ determines whether the claimant's RFC permits her to resume her previous employment. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can continue the work that she performed pre-impairment, then she is not "disabled" and not entitled to disability benefits. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot continue in this line of work, the analysis proceeds to step five. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that is consistent with her RFC, age, education, and past work experience.

*See id.*; *Malloy*, 306 F. App'x at 763. If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

### III. DISCUSSION

Plaintiff appeals the ALJ's written decision and raises three arguments in support of remand or reversal. First, Plaintiff contends that the ALJ's finding that Plaintiff's severe impairments did not meet or medically equal one of the Listed Impairments was not supported by substantial evidence. (Pl.'s Moving Br. 10-16, ECF No. 10.) Second, Plaintiff contends that the ALJ's decision as to Plaintiff's RFC is not supported by substantial evidence. (*Id.* at 16-20.) Third, and finally, Plaintiff contends that the ALJ's finding that Plaintiff can engage in alternative work was not supported by substantial evidence. (*Id.* at 21-25.)

The Court considers each of these arguments below and concludes that the ALJ's findings are supported by substantial evidence.

#### A. The ALJ's Decision that Plaintiff's Severe Impairments Do Not Meet or Medically Equal One of the Listed Impairments is Supported by Substantial Evidence

Plaintiff first contends that the ALJ's determination that Plaintiff's affective disorder and anxiety did not meet the requirements of the Listed Impairments is not supported by substantial evidence. (*Id.* at 10.) In substantiating this contention, Plaintiff appears to argue that while the ALJ correctly goes through each of the "Paragraph B" criteria in assessing Plaintiff's severe impairments under step three, the ALJ failed to consider all evidence and sufficiently articulate his reasoning for concluding Plaintiff's severe impairments do not meet or medically equal one of the Listed Impairments. (*See id.* at 12-13.) Plaintiff appears to be particularly concerned that the ALJ, while conducting his step-three analysis, conflated his analysis for step three with his analysis for her RFC. (*Id.* at 12, 14.)

9

At the third step in the sequential evaluation process, a claimant will be considered disabled where a claimant has an impairment or combination of impairments that meet(s) durational requirements and meet(s) or equal(s) the criteria for Listed Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "In making a determination at step three, an ALJ should set forth the evidence he found persuasive, the evidence he rejected, and his reasoning." *Walker v. Comm'r Soc. Sec.*, No. 18-17172, 2020 WL 1531384, at *3 (D.N.J. Mar. 31, 2020) (citing *Cotter*, 642 F.2d at 705-07). In doing so, however, the Third Circuit does not require "the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016) (internal quotation mark and citation omitted).

Here, the ALJ provided sufficient reasoning and clarity in his step-three findings for the Court to determine his decision was based on substantial evidence. Plaintiff's primary contention, that the ALJ did not adequately expound upon his reasoning for his "Paragraph B" criteria findings, is unpersuasive. Plaintiff cites no authority establishing that the ALJ cannot make step-three findings and include his reasoning for those findings in his RFC analysis. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (finding the ALJ is not required to "adhere to a particular format in conducting [his step-three] analysis"). In conducting its review of the ALJ's decision for reliance on substantial evidence, it is perfectly within the Court's capacity to follow the ALJ's instruction to consider his reasoning for step three later in his decision. *See Zirnsak*, 777 F.3d at 610 (the Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." (citation omitted).)

Plaintiff's next assertion that the ALJ "cherry-picked" evidence while considering step three is also unpersuasive. (Pl.'s Moving Br. 13.) On review of the ALJ's decision, it appears the

10

ALJ cites evidence that both tends to support and/or disfavor a "marked" or "extreme" limitation finding under the "Paragraph B" criteria. (*See e.g.*, AR 21 (citing evidence that Plaintiff "reported some difficulty concentrating" but also citing evidence that about one year later Plaintiff "was oriented times three and showed only mildly impaired attention and concentration").) The ALJ also provides his reasoning for crediting certain evidence over other evidence, albeit more by inference than by express declaration. (*See e.g., id.* (reasoning that a finding of "moderate limitations" as to Plaintiff's ability to interact with others was appropriate where "[i]n March 2020, [Plaintiff] was admitted with suicidal threats, but improved quickly and was stable on discharge" and further elaborating that Plaintiff thereafter "denied any hallucinations, delusions, suicidal or homicidal ideation, [and] was hopeful [and] optimistic and had plans to have a happy and healthy life in the community").) This more inferential presentation of step-three reasoning is acceptable so long as it does not affect the Court's ability to conduct a judicial review and conclude that the ALJ considered all probative evidence in rendering his decision. *See Brown v. Comm'r Soc. Sec.*, No. 08-6314, 2009 WL 2905434, at *4 (D.N.J. Sept. 8, 2009) (citing various Third Circuit precedent and substantiating that so long as the ALJ states his reasoning clearly enough for a Court to review his decision and ensure that all probative evidence was considered, the ALJ's decision should be affirmed) (collecting cases)). Here, the Court finds that the ALJ's reasoning and consideration of the evidence was sufficient to satisfy the Court that he considered all probative evidence and his decision was based upon substantial evidence.

> B.   **The ALJ's Decision as to Plaintiff's RFC is Supported by Substantial Evidence**

Plaintiff next contends that the ALJ's finding of Plaintiff's RFC was not supported by substantial evidence. (Pl.'s Moving Br. 16.) The crux of Plaintiff's contention is that the ALJ's findings contain only cursory discussions of medical opinions as to Plaintiff's ability to function

and that the ALJ again did not sufficiently articulate his reasoning in his findings. (*See id.* 17-18.) The Court disagrees.

"A claimant's RFC reflects 'what [the claimant] can still do despite [his or her] limitations.'" *Morris v. Comm'r Soc. Sec.*, No. 19-13744, 2020 WL 2764803, at *4 (D.N.J. May 28, 2020) (citing 20 C.F.R. § 416.945(a)). The regulations are clear that the RFC determination is expressly reserved for the Commissioner rather than any medical source. *Id.* (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c)). As such, an ALJ is free to credit one medical opinion over another. *Chambers v. Kijakazi*, No. 21-20678, 2022 WL 10490548, at *7 (D.N.J. Oct. 18, 2022) (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009)). Where a conflict in medical evidence exists, however, the ALJ cannot reject evidence for no reason or for the wrong reason. *Diaz*, 577 F.3d at 505. Instead, "[t]he ALJ must consider all the evidence and give some reason for discounting the evidence [he] rejects." *Id.* (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

Here, after consideration of the medical evidence, the ALJ appropriately credits some evidence and states reasons for discounting other evidence. First, the ALJ credits the state psychological consultants' conclusions that Plaintiff could perform unskilled work with limited social interactions. (AR at 22.) The ALJ then credits Dr. Coffey's conclusions that Plaintiff suffered from neither psychological limitations nor significant cognitive deficits. (*Id.*) Second, the ALJ notes contradicting medical evidence introduced by a variety of medical professionals finding that Plaintiff suffered from maladies that rendered her unfit to work. (*See e.g., id.* at 22 ("Dr. Shenouda M.D. found [Plaintiff] is limited by depression . . . Dr. Ginn-Scott, Ph.D. found [Plaintiff] is unable to work due to emotionality and stress tolerance").) Finally, the ALJ states his reasoning for why he credits the state psychological consultants and Dr. Coffey's conclusions by

citing facts from the record that support their conclusions and contradict conflicting medical opinions. (*See e.g.*, *id.* (finding that Dr. Shenouda's opinion that Plaintiff is limited by depression is "contradicted by evidence [of Plaintiff's] self-report [that she is] feeling less depressed with treatment").) In sum, the ALJ appropriately addressed a conflict in medical evidence and gave his reasons, albeit briefly, for rejecting certain medical evidence and crediting other medical evidence. *See Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). ("[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph" will suffice). As such, the Court finds that the ALJ comported with applicable dictates and supported his decision with substantial evidence.

### C. The ALJ's Decision that Plaintiff Could Engage in Alternative Work is Supported by Substantial Evidence

Finally, Plaintiff contends that the ALJ's findings under step five cannot be supported by substantial evidence where the ALJ's findings as to RFC are not supported by substantial evidence. (Pl.'s Moving Br. 22.) As the Court found that the ALJ's findings as to RFC were supported by substantial evidence, Plaintiff's first argument fails. The rest of Plaintiff's arguments as to the ALJ's step-five analysis are either vague or simply appear to question the ALJ's interpretation of the substantial evidence. (*See e.g.*, Pl.'s Moving Br. at 22-25 (making references to the failings of Plaintiff's former counsel at the hearing and appearing to argue the ALJ had a duty to remedy former counsel's deficiencies by making additional inquiries of the vocational witness but citing case law from other Circuits and failing to clearly articulate how such arguments affect the Court's substantial evidence analysis). As such, with no basis to conclude the ALJ did not rely on substantial evidence, the Court affirms the ALJ's decision at step five.

13

## IV. <u>CONCLUSION</u>

For the reasons outlined above, the ALJ's decisions as to step three, RFC, and step five are supported by substantial evidence. As such, and after fully reviewing the record, the Court affirms the Commissioner's decision in this case. The Court will issue an Order consistent with this Memorandum Opinion.

<u>/s/ Georgette Castner</u>
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE